UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GILBERT MICHAEL GREENWOOD,

                 Plaintiff,

v.

PIERCE COUNTY, *et al.*,

                 Defendants.

Case No. C21-5874-JHC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Gilbert Greenwood is currently confined at the Stafford Creek Corrections Center in Aberdeen, Washington. The claims asserted in this action arise out of Plaintiff's pretrial detention at the Pierce County Jail ("the Jail") in 2018-19. Plaintiff alleges in his amended complaint that his right to receive medical care, as guaranteed by the Fourteenth Amendment, was violated during the course of his confinement at the Jail. (*See* Am. Compl. (dkt. # 8) at 4-26.) Plaintiff identifies Pierce County and Dr. Miguel Balderrama, the attending physician and medical director at the Jail, as Defendants in his amended complaint. (*Id*. at 1, 3.) Plaintiff seeks damages. (*Id*. at 28.)

Defendants now move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). (Defs.' Mot. (dkt. # 14).) Plaintiff has filed a response opposing Defendants' motion (Resp. (dkt. # 27)), and Defendants have filed a reply to Plaintiff's response (Reply (dkt. # 29)).[1] The Court, having reviewed Plaintiff's amended complaint, Defendants' motion to dismiss, and the briefing of the parties, concludes that Defendants' motion to dismiss should be granted in part and denied in part.

## II.    BACKGROUND

Plaintiff filed his original complaint in this action in December 2021. (*See* dkt. # 1.) The Court declined to serve that complaint on the nine Defendants identified therein, but granted Plaintiff leave to file an amended complaint curing a number of specified deficiencies. (*See* dkt. # 5.) Plaintiff thereafter filed an amended complaint which the Court deemed sufficient to warrant service on the two Defendants identified therein, Pierce County and Dr. Miguel Balderrama. (*See* Am. Compl.)

Plaintiff alleges in the first count of his amended complaint that Dr. Balderrama violated his rights under the Fourteenth Amendment when he failed to provide timely and adequate care for Plaintiff's Syringomyelia, a disorder involving the spinal cord, and for his gastroesophageal

---

[1] Defendants include in their reply brief an objection to additional material submitted by Plaintiff in conjunction with his response to the motion to dismiss. (*See* Reply at 1-2.) Defendants argue that such material is not properly before the Court on a Rule 12(b)(6) motion and should not be considered. (*Id*.) The Court concurs and therefore will not consider the additional material in resolving the motion to dismiss.

The Court will likewise not consider the contents of Plaintiff's recently filed "Reply to Defendants' Reply on Their Motion to Dismiss Pursuant to FRCP 12(b)(6)." (Dkt. # 30.) Plaintiff's brief is effectively a surreply. Local Civil Rule ("LCR") 7(g)(2) provides that a party may file a surreply only for the purpose of requesting that material contained in, or attached to, a reply brief be stricken, and that "a surreply filed for any other reason will not be considered." LCR 7(g)(2). Plaintiff's surreply was filed solely to present additional arguments in opposition to Defendant's motion to dismiss, and therefore, is not properly before the Court.

REPORT AND RECOMMENDATION
PAGE - 2

reflux disease ("GERD"). (*See* Am. Compl. at 4-19.) According to the allegations in the amended complaint, Syringomyelia is a disease in which a fluid-filled cavity called a syrinx forms within the spinal cord, and if not surgically decompressed, "can permanently block blood flow resulting in spinal cord nerve cell death, or atrophy." (*Id*. at 6-7.) Plaintiff asserts that Dr. Balderrama ignored his repeated requests for care in relation to his Syringomyelia, which delayed necessary testing and treatment, and ultimately resulted in Plaintiff suffering permanent neurological damage. (*See id*. at 4-19.)

Plaintiff claims that not only did he repeatedly request treatment, his medical records on file at the Jail confirmed his history with the disease and it nevertheless took Dr. Balderrama five months to schedule an appointment to see Plaintiff. (*See* Am. Compl. at 10-11.) Plaintiff claims that when he finally saw Dr. Balderrama at the end of November 2018, he was suffering severe symptoms of the Syringomyelia, including neurological deficits and chronic pain, but Dr. Balderrama failed to elevate his treatment status to emergent or to provide pain medication. (*See id*. at 10-12.) Plaintiff also alleges that Dr. Balderrama and other members of the medical staff ignored his complaints regarding his stomach issues, including difficulty swallowing and an inability to keep food down, and that Dr. Balderrama refused to meet with him and provide him his longstanding prescription for Nexium which caused him to suffer "unbearable" stomach pain for a year. (*Id.* at 8-11, 17, 19.)

Plaintiff asserts in the second count of his amended complaint that Pierce County also violated his right under the Fourteenth Amendment to receive adequate medical care in relation to his Syringomyelia and GERD. (*See* Am. Compl. at 20-22.) The facts alleged in support of this claim are somewhat confusing and inconsistent. Plaintiff alleges that unnamed medical personnel at the Jail kept him from seeing Dr. Balderrama for five months, placing Plaintiff instead on the

REPORT AND RECOMMENDATION
PAGE - 3

"nurse sick call list" where his complaints were ignored. (*See id*.) Plaintiff also claims, however, that he could have been kept from seeing the doctor because *either* the doctor was not informed of his serious complaints, *or* the doctor simply ignored such complaints. (*Id*. at 21.)

Plaintiff also generally alleges in the second count of his amended complaint that Pierce County medical personnel refused to provide his previously prescribed medications, and that Pierce County officials employed unqualified treatment providers and withheld adequate treatment for Plaintiff's Syringomyelia and GERD. (Am. Compl. at 22-23.) Plaintiff appears to claim that because of the general deficiencies in the way the Jail medical clinic was managed, and because of the way the clinic staff managed his care in particular, he suffered spinal cord damage resulting in permanent neurological deficits and chronic pain. (*Id*. at 24-25.)

### III.    DISCUSSION

#### A.    Applicable Standards

##### 1.    Motion to Dismiss Standard

A defendant may move for dismissal under Rule 12(b)(6) when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

2. Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (i) he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

**B.    Analysis**

1. *Pierce County*

Defendants argue that Plaintiff's claim against Pierce County should be dismissed because Plaintiff fails to identify a custom or policy of Pierce County that caused a violation of his constitutional rights, or to allege any facts showing that a custom or policy of Pierce County was the reason he did not receive the treatment he alleges he should have received. (*See* Defs.' Mot. at 6; Reply at 3.) Defendants further argue that Plaintiff's claim against Pierce County is also deficient because he fails to allege that Pierce County employees were not properly trained

or supervised, or to allege any facts showing that a failure to properly train or supervise on the part of Pierce County was the reason Plaintiff did not receive the treatment he alleges he should have received. (Defs.' Mot. at 6.)

A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id. Monell*, 436 U.S. at 691. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan Cnty. Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694). A Plaintiff must also demonstrate that, the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Id*. at 404. Liability may also exist where there is a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) (citing *City of Canton*, 489 U.S. at 388).

Defendants are correct that Plaintiff does not clearly identify in his amended complaint any custom or policy of Pierce County pursuant to which he was denied adequate medical care. He instead identifies deficiencies in the care provided by the Jail medical staff. In particular, he alleges that various members of the Jail medical clinic staff, including nurses, doctors, and the Health Services Administrator, ignored his serious diseases and his repeated requests to see the doctor. (Am. Compl. at 20.) Plaintiff contends that the clinic nurses, in particular, kept him from seeing Dr. Balderrama and he suggests that they did this either intentionally by following orders from "higher up," which Plaintiff contends would constitute and unacceptable custom or policy, or because they lacked sufficient training. (*Id*. at 21.) Plaintiff also contends that the Jail medical staff unreasonably withheld and/or delayed adequate care for his serious diseases, provided

"unqualified treatment," and refused to provide previously prescribed medications, as a result of which he "suffered permanent neurological deficits, chronic pain, and physical disability." (*See id*. at 21-25.)

In his response to Defendants' motion to dismiss, Plaintiff attempts to bolster his claim against Pierce County by alleging more specifically that Pierce County has a policy or practice of delaying and denying necessary care, which Plaintiff claims resulted in him suffering permanent neurological damage. (Resp. at 10-15.) Plaintiff also asserts that the electronic kiosk system through which inmates must request medical care is ineffectual because it deprives inmates of direct access to doctors and instead relies on nurse "screeners" who proved unwilling or unable to assign a qualified provider to address Plaintiff's serious medical needs. (*See id*.)

While it is clear that Plaintiff was dissatisfied with the responses he received from members of the Jail medical staff to his inquiries and requests for treatment, he has not alleged sufficient facts from which this Court could reasonably infer that Pierce County had a widespread policy or practice of failing to adequately and/or appropriately respond to requests for medical care, or that such a policy or practice was the moving force behind the alleged deliberate indifference to Plaintiff's medical needs. Indeed, exhibits submitted by Plaintiff in support of his amended complaint undermine his suggestion that Pierce County has a custom or policy of failing to adequately respond to requests for care. (*See* dkt. # 8-1.) Those exhibits include multiple pages in which Plaintiff details the content of various kiosk messages he sent to the medical staff requesting care (*see id*., Ex. 1), and those pages reveal that Plaintiff complained to the Jail medical staff on more than one occasion that they were more responsive to requests for care submitted by other inmates, and he questioned why he was not afforded the same consideration (*see id*. at 15, 19-20).

REPORT AND RECOMMENDATION
PAGE - 7

Plaintiff also suggests in his amended complaint and in his response to the motion to dismiss that clinic staff were not properly trained and that the County employed unqualified treatment providers (*see* Am. Compl at 21-23; Resp. at 12, 17-18), but Plaintiff's assertions are too vague to state a viable claim against Pierce County based on any alleged failure to properly train and supervise individuals employed in the Jail medical clinic. In sum, Plaintiff's amended complaint fails to adequately state a claim for relief against Pierce County, and should therefore be dismissed as to Pierce County.

### 2. Dr. Balderrama

Defendants argue that Plaintiff's claims against Dr. Balderrama must also be dismissed because the facts alleged by Plaintiff in his amended complaint are insufficient to demonstrate deliberate indifference. (Defs.' Mot. at 10.) Defendants argue that the facts show Plaintiff was receiving medical care related to his condition from Dr. Balderrama and other members of the medical staff, and that Plaintiff has demonstrated, at most, that he had a difference of opinion with Dr. Balderrama as to his treatment which does not amount to deliberate indifference. (*See id.*)

Because Plaintiff was a pretrial detainee at times relevant to this action, his claim of inadequate medical care arises under the Fourteenth Amendment and is evaluated under an objective deliberate indifference standard.[2] *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc)). The elements of such a claim are: "(i) the defendant made an intentional

---

[2] Defendants, in their motion to dismiss, incorrectly rely on the Eighth Amendment standard applicable to claims of inadequate medical care brought by convicted prisoners. (*See* Defs.' Mot. at 7-9.) Defendants correct this error in their reply brief, identifying the proper, and distinct, Fourteenth Amendment standard. (Reply at 4-5.)

REPORT AND RECOMMENDATION
PAGE - 8

decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125 (citing *Castro*, 833 F.3d at 1071).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071 (quoted sources omitted)). A defendant's "mere lack of due care" is insufficient to state a Fourteenth Amendment claim. *Id.* Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

A difference of opinion between the inmate and medical authorities regarding proper treatment does not constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). The delay of, or interference with, medical treatment for a serious medical need, however, can amount to deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc)). The inmate must show harm resulting from the delay. *Id*.

Plaintiff alleges in his amended complaint that Dr. Balderrama, in his dual roles as the Jail's sole attending physician and its medical director, violated his right to receive adequate medical care. (Am. Compl. at 4.) Plaintiff avers that inmates at the Jail report ailments and

request medical services via an electronic kiosk that is monitored by Dr. Balderrama directly or by clinic staff who pass information to Dr. Balderrama. (*Id*. at 5.) Thus, after arriving at the Jail in June 2018, Plaintiff sent a kiosk message reporting that he was suffering active symptoms of Syringomyelia and GERD. (*Id.* at 8.) Plaintiff asserts that he requested in his message that he be provided his Nexium prescription medication and he indicated that he needed to see a doctor immediately. (*Id*.) Plaintiff received neither his prescription nor a visit from Dr. Balderrama in response to his message. (*See id*.)

Plaintiff asserts that between the time he submitted his initial kiosk message on June 20, 2018, and December 23, 2018, he repeatedly directed kiosk messages to Dr. Balderrama reporting serious symptoms of, and seeking treatment for, his Syringomyelia and GERD diseases, but Dr. Balderrama refused to see him and/or provide necessary prescription medications. (*See* Am. Compl. at 9-13.) Plaintiff claims that Dr. Balderrama disregarded his reports of worsening symptoms, including neurological deficits, gastrointestinal pain, and other unidentified chronic pain, despite having access to Plaintiff's medical records that documented his prescriptions and could have been used to treat his Syringomyelia. (*Id*. at 10-11.)

Plaintiff alleges that when Dr. Balderrama finally did examine him on November 30, 2018, over five months after he first requested care, Dr. Balderrama failed to elevate his treatment status to "emergent." (Am. Compl. at 11.) Plaintiff maintains that Dr. Balderrama, in the 24 days following his examination of Plaintiff, did nothing to help him despite being aware that Plaintiff was suffering "active" symptoms causing "daily permanent physical degeneration." (*Id*. at 12.) Plaintiff claims that Dr. Balderrama caused him spinal cord damage, resulting in permanent neurological deficits, because he failed to take reasonable measures to abate the risk of harm to Plaintiff from his known Syringomyelia disease. (*Id*. at 15.)

REPORT AND RECOMMENDATION
PAGE - 10

Defendants assert in their motion to dismiss that Dr. Balderrama provided Plaintiff care, and they cite to the fact that the doctor saw Plaintiff in November 2018, and referred Plaintiff out to receive an MRI and a consultation with a neurosurgeon. (*See* Defs.' Mot. at 9-10.) Defendants argue that Plaintiff's claims show only that he had a difference of opinion with Dr. Balderrama and the neurosurgeon who examined him in January 2019 and recommended no further treatment. (*See id*. at 2, 10.) Defendants note in their reply brief that Plaintiff was also subsequently referred to a neurologist who likewise recommended no treatment. (Reply at 5.)

However, the thrust of Plaintiff's claim against Dr. Balderrama is that by the time the MRI was performed in December 2018, he had already sustained permanent damage to his spinal cord because of Dr. Balderrama's failure to respond to his earlier complaints that he was suffering severe and worsening symptoms of Syringomyelia. (Am. Compl. at 15-16.) Plaintiff maintains that the MRI actually revealed such damage, damage which did not appear on an MRI performed after Plaintiff's previous syrinx decompression surgery. (*Id*. at 15.)

With respect to Plaintiff's medications, while the record demonstrates that Plaintiff was provided some medication for his GERD, Plaintiff claims that the medication was ineffectual, and that Dr. Balderrama, the only one who could authorize the medications for Plaintiff's GERD or his Syringomyelia, refused to meet with him to even discuss the issue. (*See* Am. Compl. at 9-11, 16-19, 24.) According to the allegations in the complaint, after repeated attempts over many months to obtain necessary medications, Plaintiff was finally advised in January 2019 that he was on the list to have the doctor review his medications, but then he did not see the doctor until March 2019. (*See id*.) Plaintiff claims that Dr. Balderrama's refusal to provide previously prescribed medications and/or his delay in responding to requests to discuss appropriate medications, caused him to suffer severe pain for a year. (*See id*. at 18-19, 24.)

REPORT AND RECOMMENDATION
PAGE - 11

Plaintiff's allegations that Dr. Balderrama knowingly delayed or refused to provide care, leading to permanent injury and sustained pain, at least facially suggest conduct "akin to reckless disregard" to Plaintiff's serious medical needs. Plaintiff has therefore adequately alleged a claim that Dr. Balderrama acted with objective deliberate indifference to his serious medical needs, and Defendants' motion to dismiss should therefore be denied with respect to Dr. Balderrama.

### 3.    *Qualified Immunity*

Defendants also assert that Dr. Balderrama is entitled to qualified immunity. (*See* Defs.' Mot. at 10-11.) When defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), "'dismissal is not appropriate unless [the Court] can determine, based on the complaint itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). Although defendants are entitled to raise qualified immunity in a motion to dismiss, generally speaking, it is better addressed in the context of a motion for summary judgment. *See Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) (noting that it is difficult for courts to decide qualified immunity at the motion to dismiss stage because it forces the Court to decide "far-reaching constitutional question on a nonexistent factual record," and suggesting the issue is better left for summary judgment). Thus, if the court determines dismissal is not appropriate, the court may deny a qualified immunity defense without prejudice and allow a defendant to re-raise the defense after further factual development at summary judgment or at trial. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).

Defendants argue generally in their motion to dismiss that Dr. Balderrama provided medical care to Plaintiff and that "there is no 'prior law allegedly establishing' that the actions alleged here violated the Eighth Amendment." (Defs.' Mot. at 11 (quoting *Hannula v. City of*

REPORT AND RECOMMENDATION
PAGE - 12

*Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990).) This argument is misplaced because Plaintiff does not allege in his amended complaint any violation of his rights under the Eighth Amendment, he alleges only a violation of his Fourteenth Amendment rights. Underlying Defendants' argument, however, is a principle that applies to claims of inadequate medical care arising under either the Eighth Amendment or the Fourteenth Amendment, *i.e.*, that a difference of opinion between a physician and a prisoner concerning the appropriate course of treatment does not amount to deliberate indifference.

Here, Plaintiff does not simply allege facts suggesting a difference of opinion regarding the appropriate course of treatment. Instead, as explained above, Plaintiff alleges that Dr. Balderrama delayed medical care during a critical period when Plaintiff was experiencing severe symptoms of Syringomyelia, and that his failure to respond in a timely fashion to Plaintiff's reports of worsening symptoms, including increasing paralysis, caused Plaintiff permanent neurological damage. (*See* Am. Compl. at 15-16.) Plaintiff also alleges that over a period of many months he repeatedly complained about not receiving necessary medications and Dr. Balderrama, the only individual authorized to approve such medications, refused to meet with him to even discuss the issue causing Plaintiff to suffer chronic pain associated with both his Syringomyelia and his GERD for a year. (*See id.* at 9-11, 16-19, 24.)

Reading the allegations in the light most favorable to the non-moving party, Plaintiff has alleged that Dr. Balderrama knowingly withheld necessary medical treatment, delaying Plaintiff's evaluation for serious symptoms of Syringomyelia and thereby denying him access to a neurologist and a neurosurgeon who may have been able to provide appropriate treatment during a period of time when permanent damage may have been avoided, and also denying him access to necessary medications for both his Syringomyelia and his GERD. The right to be free

REPORT AND RECOMMENDATION
PAGE - 13

from wanton delays of necessary medical procedures is a right that is well established. *See Portillo v. Johnson*, 94 F. App'x 457, 459 (9th Cir. 2004) (finding that, despite repeated complaints and evidence of a kidney stone, defendant's three-month delay in referring a prisoner with a kidney stone to a urologist constituted deliberate indifference).

Thus, at this early stage in the case, Plaintiff has made allegations that would preclude defendant Balderrama from qualified immunity. Therefore, the Court recommends denying Defendants' motion as to qualified immunity for Dr. Balderrama without prejudice.

### IV.   CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion to dismiss (dkt. # 14) be GRANTED as to Defendant Pierce County and DENIED as to Defendant Dr. Miguel Balderrama. This Court further recommends that Plaintiff's amended complaint (dkt. # 8) and this action be dismissed with prejudice as to Defendant Pierce County. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 23, 2022**.

//

//

//

REPORT AND RECOMMENDATION
PAGE - 14

DATED this 26th day of August, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15